Curia, per
Richardson, J.
The 6th sec. of the Act of 1833, 6 Stat. 493, to amend the prison bounds Act of 1788, contains the enactment that must decide the leading question presented by the appeal, namely, were the insolvent debtors, Cook and Law, justified in leaving the prison bounds, without executing an assignment of the property set forth in their schedule, or did they thereby forfeit their bonds ?
The 6th sec. of the Act is as follows. “In all cases where a prisoner applies for the benefit of the prison bounds Act, the Judge, or commissioner of special bail, (fee. shall not discharge him, (fee. until the property contained in his schedule is produced and delivered to the assignee of such prisoner, if it be or has been within the power of the prisoner to deliver the same, since the time of his arrest.”
If we turn to the insolvent debtor’s Act of 1759, 4 Stat. 86, there is express provision requiring such assignment to be made before the discharge; see 1st. section. Under the prison bounds Act of 1788, 5 Stat. 78, the practice was uniformly the same. An assignment there must be. To let him be discharged without such assignment, would be to render the proceedings against an insolvent,' an empty show to mock his credtors.
*488 How, then, can there be a doubt upon the explicit section of the Act of 1833, which goes even further, by requiring the property to be delivered, if within the insolvent’s power ? But which only re-enacts the like provision in in the Act of 1759.
Cook and Law were bound, clearly, to execute such an assignment, to tender it, and at least to leave it at the discretion and for the use of their creditors, before they left the prison bounds.
This they did not, yet departed, leaving their creditors no substitute but to proceed upon the prison bounds bonds against their sureties, the present defendants.
Let it be admitted that the verdicts authorized the discharge of Cook and Law by the commissioner. Yet still such discharge must follow after the assignment, and not go before it, leaving .the creditors without this essential, and only, substitute, in place of the persons of the insolvents.
It is in vain to urge this court, upon the alleged conduct or declarations of the commissioner of special bail who presided at the trial. As the counsel observed, there was probably heat on both sides. But this could not prevent Cook and Law from executing, at least after, if not before, their discharge, the assignment, which is the only practical and available object to the creditors, while it is equally the justifying cause, and therefore the indispensable condition, of insolvent laws, before the body of the debtor can be discharged.
If the verdicts were sufficient, as they probably were, the course of Cook and Law was plain. 1st. They should have presented an assignment. 2d. if the verdicts were insufficient, or a nullity, which I do not conceive, move for a new trial. 3d. If the conduct or refusal of the commissioner was erroneous, the writ of mandamus would have constrained him to the proper legal course of his duty.
But Cook and Law followed neither course, practically. They departed from the prison bounds, leaving their creditors to the bonds of the defendants exclusively.
There may have been much paliation for heat and pre- *489 cipitancy, but none for such a breach of contract to creditors or sureties. These are innocent third parties. They stand apart from the quarrel, and cannot be affected by it.
This state of things brings ns to the trials of the defendants upon their bonds, in the name of the sheriff, for their creditors, and the decision may be readily foreseen.
The Judge’s charge to the jury has been laid before this court. It assumes the very principles I have discussed, and of itself answers the exceptions taken to it.
But referring briefly to these exceptions, how can it be supposed that the authority of the commissioner ceased with the verdicts, when there was no assignment?
The jury could not discharge the insolvents. The commissioner had the same discretion as all courts, to have the insolvents brought up to be tried, and his report is that he remanded them to the bounds.
To this exception, I need not repeat, that the assignment must be made before the discharge.
To the 4th exception, that the assignment, at least, if not the discharge, must be made to appear by the defendants.
To the 5th, before being discharged, the jury had power to remodel their verdict. But under any possible construction or view, the question continually occurs, to be answered by the bondsmen, by-what authority did Cook and Law depart permanently from the bounds, without an assignment at any time?
Finally, the jury followed the law laid down, and gave the full debts, interest and costs, as they would have given against the principal debtors, Cook and Law.
These are heavy verdicts for sureties to pay, but such verdicts are within their bonds, and this court cannot say they should be diminished, to the loss of the creditors of Cook and Law.
Courts are to support contracts, and legal verdicts, and we cannot interfere with the lawful rights of creditors. On the contrary, sureties who bind themselves for the lawful conduct of their • principals, must take the hazard of their misconduct, and abide the consequences, or they would not be sureties at law.
But for satisfaction sake, let us reduce the case to its *490 essential facts. All stood well up to -the controvercy, at the trial before the commissioner. But finally the jury brought in their verdict, and then modified it, which is no unusual occurrence when done defore they have separated.
Here again, all stood well. But the commissioner pro-' nounced the verdicts nullities; .and offered to summon another jury, if desired, or hear the counsel, “at any time they would request,” and ordered the sheriff to take charge of the prisoners, &e.
By such conduct, the commissioner indicated, plainly, that he did not intend to discharge the insolvents. ' But he retained the right to change his opinion, and offered to hear the counsel.
But they advised the prisoners to go at large, and not to return to the bounds. But still they did return.
All now again stood in statu quo ante helium.
In the mean time, and at no time, was any assignment of the insolvents executed and tendered. Nor, as far as appears, any offer to execute it.
But until this had been done, the commissioner was never placed in a position to decide judicially, whether the insolvents should be discharged.
They certainly were not yet discharged. Nor do they appear to have so thought. For they returned to the bounds for some time.
In the mean time the sureties would seem to have supposed they were discharged of their obligation, or else they confided in Cook and Law remaining in the bounds.
No appeal was offered, and no practical intelligible motion is reported, or any thing further done. Cook and Law would seem to have acquiesced in the opinion of the commissioner.
But in a short time they departed permanently, leaving no power to their creditors to collect their effects or use their schedule in any way — and to all appearance regardless of their sureties.
In what, then, when divested of its controversial incidents and peculiar circumstances, does this case differ from the not very unfrequent -case of a debtor leaving the bounds, to the cost of his sureties'? And whether he does so *491 coolly or passionately, there is no difference in this consequence.
The motion must therefore be dismissed, upon strict right and law.
Evans, Wardlaw and Frost, JJ. concurred.
O’Neall and Butler, JJ. dissented.